## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.S.-1, J.S.-2, J.S.-3, and J.S.-4**

**No. 16-0315** (Clay County 15-JA-42, 15-JA-43, 15-JA-44, & 15-JA-45)

**FILED**

**September 6, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.S.-5, by counsel Kelly C. Pritt, appeals the Circuit Court of Clay County's February 22, 2016, order terminating his parental rights to J.S.-1, J.S.-2, J.S.-3, and J.S.-4.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Michael W. Asbury Jr., filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights because the evidence did not support termination and because he alleges that the guardian failed to satisfy his obligations in representing the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2015, the DHHR filed an abuse and neglect petition against the parents and alleged that their drug abuse impaired their ability to properly parent the children. The DHHR also alleged that the mother abused drugs during her pregnancy with J.S.-4. At the time of J.S.-4's birth, the child tested positive for diazepam, Oxycodone, and THC. Shortly after the child's birth, petitioner tested positive for methamphetamines, opiates, benzodiazepines, amphetamines, Oxycodone, and THC. Further, the DHHR alleged that the parents failed to provide the children with a suitable home. The parents waived their right to a preliminary hearing that same month.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because petitioner and the children in this matter share the same initials, the Court will refer to the children as J.S.-1, J.S.-2, J.S.-3, and J.S.-4 and to petitioner as J.S.-5 throughout this memorandum decision.

During an adjudicatory hearing in August of 2015, the parents stipulated to the allegations in the petition, and the circuit court found them to be abusing parents. Following the stipulations, the DHHR provided the parents with various services, including parenting instruction, life skills training, and transportation services. The DHHR also offered the parents drug treatment and rehabilitation on several occasions. Although the parents initially complied with services, they began to miss appointments for services in September of 2015 and repeatedly tested positive for drugs or avoided or refused to submit to drug screens throughout the proceedings. Due to repeated positive drug screens, both parents missed several opportunities to visit with the children.

In December of 2015, the circuit court held a dispositional hearing, during which it found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because of his continued drug abuse and failure to accept responsibility for his actions. Ultimately, the circuit court terminated petitioner's parental rights to the children. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

To begin, we find no error in the circuit court's termination of petitioner's parental rights. On appeal, petitioner argues that the evidence below did not support the circuit court's finding that there was no reasonable likelihood he could substantially correct the conditions of abuse and neglect. The Court, however, does not agree. While petitioner points to his sporadic compliance to argue that he substantially complied with the services below, he ignores the fact that he continued to abuse drugs throughout the pendency of the proceedings. In fact, the record shows that petitioner tested positive for drugs, including methamphetamine, opiates, amphetamines, and Oxycodone, approximately one week prior to the dispositional hearing.

Moreover, petitioner's continued drug abuse prevented visits with his children, as the DHHR predicated visitation upon successive negative screens. Because of his continued drug

abuse, petitioner was unable to visit with the children during the months of September of 2015 and October of 2015. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n. 14, 479 S.E.2d 589, 600, n. 14 (1996)(citing *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 228 and 237, 470 S.E.2d 177, 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Based upon the evidence below, it is clear that petitioner failed to demonstrate potential to achieve sufficient improvement in the conditions of abuse and neglect, as evidenced by his failure to consistently visit with the children due to his continued drug abuse.

Further, pursuant to West Virginia Code § 49-4-604(c)(1), there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected when

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning . . . .

As addressed above, petitioner's drug abuse continued throughout the matter below. As such, it is clear that the circuit court had sufficient evidence upon which to find that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect. The circuit court further found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon these findings.

In regard to the circuit court's finding that termination was necessary for the children's welfare, petitioner argues that no evidence supported the same. Specifically, petitioner asserts that his psychological evaluation recommended inpatient drug treatment, but that the document was not received until late November of 2011, shortly before disposition. As such, petitioner argues that the children would not have been harmed by allowing him additional time to comply with such a program. This argument, however, ignores the fact that the DHHR provided testimony that petitioner was offered inpatient drug rehabilitation early in the proceedings, but chose not to comply with this service. Specifically, the DHHR established that it offered petitioner "help . . . with . . . getting inpatient, long-term drug rehabilitation" by discussing the same during multidisciplinary team ("MDT") meetings. In fact, according to testimony from a DHHR employee, inpatient drug rehabilitation was "offered all along and strongly recommended." Despite the DHHR's recommendation, petitioner chose not to avail himself of this treatment. Accordingly, it is clear that the children's welfare required termination of petitioner's parental rights, as he previously failed to submit to the recommended treatment to correct the conditions of abuse and neglect in the home. As such, we find no error in the circuit court terminating his parental rights.

Additionally, the Court finds no merit to petitioner's argument that the circuit court erred in terminating his parental rights without requiring the guardian to comply with his statutory

duties.[2] Specifically, petitioner claims that the guardian failed to conduct an independent investigation into the facts of the case, file a written report with the circuit court, or participate in MDT meetings. As such, petitioner argues that the guardian was unable to assess petitioner's improvement plan to achieve reunification with the children. Petitioner further argues that the guardian's failure to comply with the process established to protect the children's best interests requires vacation of the dispositional order. The Court, however, does not agree.

We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). In support of his appeal, petitioner fails to allege what evidence, if any, the guardian would have presented that would have substantially impacted the circuit court's termination of his parental rights. Further, petitioner fails to demonstrate how any of the guardian's alleged inactions prejudiced him in any way. Regardless of whether the guardian complied with his duties, the record is clear that petitioner failed to comply with the terms and conditions imposed upon him below and, in fact, continued to actively abuse drugs throughout the proceedings. Even if petitioner's allegations against the guardian were accepted as true, it would not alter the fact that the circuit court's termination of petitioner's parental rights was based upon petitioner's well-documented failure to remedy the conditions of abuse and neglect. As such, we find that vacation of the dispositional order is not warranted and affirm the circuit court's termination of petitioner's parental rights.[3]

---

[2]According to the record, the guardian that responded to petitioner's appeal is not the same individual that served as guardian in the proceedings below.

[3]Our ultimate ruling should not be construed as an approval of guardians ad litem in abuse and neglect cases failing to properly represent their clients in compliance with the applicable rules and statutes governing such representation. While the Court declines to address the sufficiency of the guardian's representation below, we nonetheless find that the specific facts of this case do not warrant vacation of the resulting dispositional order, given the overwhelming evidence that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination of petitioner's parental rights was necessary for the children's welfare. However, we remind guardians that

> [e]ach child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, W.Va.Code [§] 49–6–2(a) [now W.Va. Code § 49-4-601(f)(1)] . . . mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings.

(continued . . . )

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 22, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: September 6, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

Syl. Pt. 5, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993). In that case, we went on to address several duties imposed upon guardians, including the requirement "that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court[;]" as well as the requirement that "an attorney [must] provide competent representation to a client, and . . . act with reasonable diligence and promptness in representing a client." *Id.* at 26, 435 S.E.2d at 164, Syl. Pt. 5. We further stated that "[t]he Guidelines for Guardians Ad Litem in Abuse and Neglect cases, . . . adopted in [*Jeffrey R.L.*], are in harmony" with the applicable statutes and rules governing both guardians ad litem specifically and attorneys generally, "and provide attorneys who serve as guardians ad litem with direction as to their duties in representing the best interests of the children for whom they are appointed." *Id*. We reiterate that holding herein, given the importance of the representation of children in such cases.